# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

**TRI-STATE BANCSHARES, INC., ET AL.**

                                                        **CIVIL ACTION NO.  15-2053**

                                                        **MAG. JUDGE KAREN L. HAYES**

**versus**

**JIM A SCOTT AND PATRICIA A. SCOTT**

## MEMORANDUM RULING

Before the court is a motion for partial summary judgment filed by plaintiffs Tri-State Bancshares, Inc. and Tri-State Bank and Trust (collectively, "Tri-State"). [doc. # 37]. Tri-State seeks resolution of four issues: (i) whether Defendant Jim Scott breached his fiduciary duty to Tri-State under LA. R.S. § 6:291; (ii) whether a conversion occurred when Jim Scott knowingly exercised control and possession of funds without authority from Tri-State with the intent to deprive Tri-State of its ownership and possessory rights in the funds; (iii) whether Jim Scott committed fraud with the intent to obtain an unjust advantage by misrepresenting that he knew of no employee dishonesty and that all employee accounts were being reviewed and audited for accuracy and; (iv) whether Tri-State is entitled to entry of a civil money judgment in an amount not less than $1,794,156.20. The motion is opposed. [doc. # 39]. For the reasons stated below, the motion will be GRANTED IN PART.

## BACKGROUND

The instant case arises out of the criminal prosecution of Jim Scott, a former Vice President of Operations for Tri-State Bank, for a multi-year defalcation scheme that resulted in

1

the embezzlement of $1,796,406.36 from Tri-State. [doc. # 1]. On July 21, 2014, Tri-State determined through James Branch, a certified public accountant, that Scott had perpetuated a fourteen year embezzlement scheme. *Id.* at 4-6. Branch was hired to handle certain reports and accounting matters. (Affidavit of Ed Kennon [doc. # 37-3, p. 2]). During the course of Branch's work, he discovered that certain bank records were locked. *Id.* at 3. Once those bank records were unlocked, Tri-State Bank personnel were able to identify imbalances that led to the discovery of Scott's thefts. *Id.*

The bank first discovered that various unsupported deposits, in the amount of $900,000.00, were transferred to an account held in the names of Jim Scott and his wife, Patricia Scott. *Id.* at 2-3. The $900,000 was transferred through unauthorized manual transfers and computer entries by Scott in March and April of 2014. *Id.* Scott admittedly circumvented Tri-State Bank's dual authentication requirement for wire transfers by using his wife's credentials to confirm the transfer. (Deposition of Jim Scott [doc. # 37-2, p. 6-7]). Additionally, the bank discovered that Scott manually restricted access to the Scott's account and manipulated access to various computer-generated reports to conceal the theft from Tri-State. [doc. # 37-3, p. 3].

Thereafter Tri-State determined through its third party accounting software administrator that Scott had stolen an additional $896,406.36 from Tri-State between 2000 and 2014, for a total of $1,796,406.36. *Id.* The additional $896,406.36 was stolen by Scott by using his administrative access to make small, manual entries to certain deposit accounts on a weekly basis. *Id.* at 4. Scott's weekly fictitious deposits were balanced on the books by creating corresponding fictitious accrued interest obligations for certain certificate of deposit accounts.

*Id.* Tri-State asserts that no Tri-State employees were aware their software was capable of allowing Scott to make unilateral manual online entries or restrict access to his account. [doc. # 37-1, p. 9].

The United States prosecuted Scott for a violation of 18 U.S.C.A. § 656, which makes it a crime for an employee or officer of a federally insured bank to embezzle the money, funds or credits of the bank. On August 7, 2015, Scott pled guilty to embezzling funds from Tri-State in violation of 18 U.S.C.A. § 656. *U.S. v. Scott*, No. 5:15-CR-00157-01 (W.D. La. Mar. 2, 2016). Scott admitted under oath that he embezzled funds from Tri-State with the intent to defraud Tri-State and asserted that the United States could prove all five elements of the charged offense beyond a reasonable doubt. (Initial Appearance and Guilty Plea Official Transcript [doc. # 37-4, p. 20]). On March 2, 2016, the United States District Court for the Western District of Louisiana ordered that Scott make restitution to Tri-State in the amount of $1,794,156.20. (Criminal Judgment [doc. # 37-9, p. 5]).

## LAW AND ANALYSIS

### I.      Summary Judgment Standard

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

  In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the

material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by

presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

>    **A.      Breach of LA. R.S. § 6:291**

Tri-State first argues that Scott breached his fiduciary duty to Tri-State under Louisiana

Revised Statute § 6:291(B), which provides:

> A director or officer of a bank or bank holding company shall not be held
> personally liable to the corporation of the shareholders thereof for monetary
> damages unless the director or officer acted in a grossly negligent manner as
> defined in R.S. 6:24 or engaged in conduct which demonstrates a greater disregard
> of the duty of care than gross negligence, including intentional tortious conduct or
> intentional breach of his duty of loyalty.

Additionally, the statute also provides that bank "officers and directors shall be deemed to stand

in a fiduciary relation to their bank . . . and shall discharge the duties of their respective positions

in good faith." LA. R.S. § 6:291(A).

Here, Scott intentionally breached his duty of loyalty and duty of good faith when he

admittedly stole funds belonging to or entrusted to Tri-State with the intent to defraud Tri-State.

Scott made this admission under oath in his criminal prosecution and asserted to the Court that

the United States could prove these facts beyond a reasonable doubt. "[T]he agent or fiduciary

may not take even the slightest advantage, but must zealously, diligently and honestly guard and

champion the rights of his principal . . . ." *Noe v. Roussel*, 310 So.2d 806, 819 (La. 1975).

Scott does not dispute his breach of LA. R.S. § 6:291, but rather states that any claims

arising out of the theft that took place more than four years before the suit was filed are

perempted and should not be allowed. [doc. # 39, p. 2]. The statute specifies a two-year

prescriptive period and four-year peremptive period for such fiduciaries' intentional and

fraudulent breaches of the duty of good faith. *See* La. R.S. § 6:293. Tri-State argues that Scott's intentional acts between 2000 and 2014 constitute a continuing tort under Louisiana law, and thus peremption for the misconduct dating back to the year 2000 did not begin to run until the misconduct ceased in July 2014.

A continuing violation or tort is one in which "the operating cause of injury is a continuous one and gives rise to successive damages." *Miller v. Conagra, Inc.*, 991 So. 2d 445, 456; *see also Abrams v. Herbert*, 590 So.2d 1291, 1294 (La. App. 1st Cir. 1991) (alleging a continuing tort requires a plaintiff to allege both continuous action and continuous damage). "When a plaintiff attempts to avail herself of the continuing tort theory, the plaintiff bears the burden of establishing its applicability." *James v. New Century Mortgage Corp.*, 2006 WL 2989242, at *6 (E.D. La. Oct. 17, 2006). If the doctrine applies, the limitations period does not begin to run until the violation ceases.

While there are some cases holding that a peremptive period can be subject to the continuing tort doctrine, the stronger line of Louisiana jurisprudence holds that a peremptive statute does not allow for suspension or interruption. See, *e.g., Glod v Baker*, 899 So.2d 642 (La. App. 3d Cir. 2005), and cases cited therein. *State Through Div. of Admin. v. McInnis Bros. Const.*, 701 So. 2d 937, 939 (La. 1997) (citing La. Civ. Code 3461). Specifically, a peremptive period is not subject to suspension under *contra non valentem*. *Id.* La. R.S. § 6:293(B) provides that an action shall be brought "within two years from the date the alleged act or omission is discovered or should have been discovered; however, even as to actions filed within two years from the date of such discovery, in all events such actions shall be filed within four years from

the date of the alleged act or omission." La. R.S. § 6:293(C) provides that "the four-year period provided in Subsection B shall be deemed peremptive...and shall not be subject to renunciation, interruption, or suspension except by timely filed suit filed in a court of competent jurisdiction and proper venue."

Scott's first-discovered embezzlement scheme resulted in the theft of $900,000 through unauthorized manual transfers which occurred in March and April of 2014. The second embezzlement scheme Tri-State discovered was of funds misappropriated on a weekly basis between 2000 and 2014, resulting in the theft of $896,406.36. (*See* Francis Edward Kennon Affidavit [doc. # 37-3, p. 3]). Tri-State discovered the thefts on July 21, 2014, and filed the instant lawsuit on July 15, 2015. [doc. # 1].

The claim for the $900,000 taken by Scott through manual transfers in March and April of 2014 is clearly within the four year peremptive period. Based on the record now before the court, there are issues of material fact as to when any or all of the $896,406.36 was taken. Tri-State alleges that those funds were stolen between 2000 and 2014, but does not specify how much was taken before the 4 year peremptive period deadline of July 15, 2011. In addition, there are issues of fact as to offsets, if any, which must be applied to any amounts owed. Therefore, Tri-State's Motion for Partial Summary Judgment on its claim that Scott breached his fiduciary duty to Tri-State under LA. R.S. § 6:291 is **GRANTED**. Additionally, the court finds that Tri-State's claim for the $900,000 taken by Scott in March and April of 2014 is timely. The remainder of Tri-State's motion for Partial Summary Judgment on its claim for Breach of Fiduciary Duty is **DENIED**.

### B.      Tortious Conversion[1]

Tri-State argues that Scott tortiously converted $1,794,406.36 and unlawfully deprived Tri-State of its possessory and ownership rights in the stolen funds in the amount of $1,794,406.36. [doc. # 37-1, p. 13]. Under Louisiana law, conversion is an intentional tort, committed when one wrongfully commits any act of dominion over the property of another in denial of or inconsistent with the owner's possessory rights, such as when one wrongfully exercises or assumes authority over another's goods, depriving him of possession, permanently or for an indefinite time. *F.G. Bruschweiler Antiques, Ltd. v. GBA Great British Antiques, LLC*, 860 So. 2d 644, 649–650 (La. App. 5th Cir. 2003) (citations omitted). The Louisiana Supreme Court has reiterated the necessity of ownership of the thing, for a plaintiff to establish a conversion action. *Id.* at 650 (*citing Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 856 (La. 1998).

With respect to alleged conversion of funds, the Fifth Circuit has articulated three elements which must be proven by the plaintiff: (1) that it owned the funds allegedly misused by the defendant; (2) that the misuse was inconsistent with the plaintiff's rights of ownership and (3) the misuse constituted a wrongful taking of the funds. *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986).

---

[1] As an initial matter, Scott argues that Tri-State has no cause of action in tort or civil conspiracy against him due to R.S. La. 6:291(E)'s mandate that the statute is the sole and exclusive law governing the relation and liability of directors and officers to their bank. [doc. # 39, p. 2]. However, Scott's actions extended beyond his duty as a fiduciary and were outside of the scope of his duties as Vice President of Operations with Tri-State. Rather, his activities were instead of a general criminal nature. Thus, Tri-State may proceed with additional causes of action that are based on theories outside of Scott's fiduciary relationship to the bank.

In this case, it is undisputed that Scott misappropriated $1,794,156.20 inconsistent with his rights of ownership and that the misuse of the funds constituted a wrongful taking. Scott also admitted in his deposition that the embezzled funds were obtained from Tri-State's general accounts. (*See* Scott Deposition [doc. # 37-2, p. 13]). Scott does argue that tortious conversion is subject to a one year liberative prescription and that there is a dispute of material fact as to if the thefts occurred within one year of commencement of the action. [doc. # 39, p. 2].

Under Louisiana law, delictual obligations are subject to a liberative prescription of one year that begins to run from the day of the injury or damage. LA. CIV. CODE art. 3492. The day of the injury is the date when the victim had actual or constructive knowledge of the damage. *Campo v. Correa*, 828 So. 2d 502, 510 (La. 6/21/02), (*citing Percy v. State, E.A. Conway Memorial Hospital*, 478 So. 2d 570 (La. App. 2 Cir. 1985)). A tort victim has constructive knowledge of the injury if there is enough notice to reasonably excite attention and put that party on guard to call for inquiry. *Id.* at 10-11. A continuing violation or tort is one in which "the operating cause of injury is a continuous one and gives rise to successive damages." *Conagra*, 991 So. 2d at 456; *see also Herbert*, 590 So. 2d at 1294.

Here, the tortious action was a continuous one, continuing from 2000 to 2014 until the discovery by Tri-State of the misappropriated funds on July 21, 2014. Scott does not assert that Tri-State had any knowledge or constructive knowledge of his embezzlement scheme or that it had enough information to put Tri-State on notice of his scheme before that date. Thus, the action for tortious conversion of the funds had not prescribed when Tri-State filed suit on July 15, 2015. [doc. # 1].

The Criminal Judgment against Scott determined that Scott must pay Tri-State restitution of $1,794,156.20. However Tri-State seeks a judgment against Scott "in the amount not less than $1,794,156.20, the amount confirmed in the criminal judgment and otherwise proven to have been stolen by Scott, and reserving its right to any balance remaining . . . ." [doc. # 37, p. 1]. Scott has not disputed either total amount.

Since the Court finds that the conversion was unlawful and that there are no other genuine issues of material fact, summary judgment in favor of Tri-State on the issue of tortious conversion is appropriate. Accordingly, judgment will be entered against Scott in an amount not less than $1,794,156.20 on Tri-State's claims for tortious conversion of the funds.

**C.    Fraud**

Louisiana Civil Code article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unfair advantage for one party or to cause a loss or inconvenience to the other." To succeed on a claim for fraudulent misrepresentation, the plaintiff must prove the following three elements by a preponderance of the evidence: "(1) a misrepresentation, suppression or omission of true information; (2) the intent to obtain an unjust advantage or to cause to damage or inconvenience to the other party; and (3) the resulting error must relate to a circumstance substantially influencing the other party's contractual consent." *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 76 So.3d 502, 509–10 (La. App. 1 Cir. 2011). The two elements essential to establishing fraud are the intent to defraud or to gain an unfair advantage and resulting loss or damage. *Tubos de Acero*, 292 F.3d at 479.

Tri-State argues that Scott misrepresented his duties and activities as an employee of Tri-

State. Scott stated in bond applications submitted to Tri-State's insurance company that he knew of no theft or employee dishonesty taking place. [docs. # 1-2; # 1-3]. Scott admitted under oath that he intentionally embezzled funds from Tri-State with the intent to injure and defraud Tri-State. [doc. # 37-4, p. 25-26]. Further, Scott's misrepresentations and scheme to defraud Tri-State inevitably influenced Tri-State to continue its employment relationship with Scott.[2] Accordingly, the court finds that Tri-State's Motion for Partial Summary Judgment on the basis that Scott committed fraud should be GRANTED and that Tri-State is entitled to an amount no less than $1,794,156.20.

### D.     Scott's Defenses

Scott argues that a material issue of fact still exists as to how much Tri-State can recover. [doc. # 39, p. 2]. First, Scott contends that any damages Tri-State received should be reduced by virtue of the funds already received from Scott. *Id.* Scott states that Tri-State has received Scott's 400 shares of stock in Tri-State Bancshares, Inc, and recovered funds from the sale of Scott's former residence in Haughton, Louisiana. However, Scott does not support his argument with any evidence and the court cannot rule on any offset that might be due based on the record as it now stands. Of course, should the evidence at trial show that Tri-State has already recovered a portion of its loss, the final judgment will be reduced by the amount of the recovery. Additionally, as Tri-State notes, funds frozen by Tri-State can be applied to any civil judgment after the judgment becomes final. [doc. # 40-2, p. 5].

---

[2] Scott does not contest his liability on the claim of fraud, except to note that the claim has prescribed. As described above, Scott's embezzlement scheme was continuous and thus, prescription did not begin to run until the violation was known to Tri-State.

Next, Scott contends that Tri-State was sued by a bonding company for a declaration that there is no coverage for the thefts of Scott. [doc. # 39, p. 3]. Scott explains that "[t]he outcome of that matter could very well have an impact upon the amount the bank is entitled to receive in order to be made whole." *Id.* The court is not persuaded by Scott's argument. Scott does not explain why this matter should be stayed until resolution of the bonding company's lawsuit or what affect that lawsuit has on Scott's liability to Tri-State.

Finally, Scott argues that Tri-State has sued two different third parties to recover allegedly stolen funds that they received from Scott for the financing of their businesses. *Id.* Scott states that an issue of fact exists as to how much of the stolen funds were diverted to these third parties. *Id.* However, this argument is premature as the resolution of those proceedings are contingent on this matter. If Tri-State is able to collect damages from other sources, it could be addressed later in connection with a judgment debtor examination proceeding. The court is unpersuaded that these issues operate to lessen Scott's liability to Tri-State or present any material issues of fact yet to be resolved. Accordingly, the court will **GRANT IN PART** Tri-State's Motion for Partial Summary Judgment.

## CONCLUSION

**IT IS ORDERED** that Plaintiff, Tri-State's Motion for Partial Summary Judgment [doc. # 37] is **GRANTED IN PART**, and that judgment is entered in favor of plaintiffs declaring that (1) Jim Scott breached his fiduciary duty to Tri-State under LA. R.S. § 6:291 in an amount not less than $900,000; (2) Jim Scott illegally converted funds from Tri-State in an amount not less than $1,794,156.20; and (3) Jim Scott committed fraud in an amount not less

than $1,794,156.20.

      THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 28th day of July 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE